# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# CENTRAL DIVISION

DIAMOND DENNIS RENAY DERX,                                                    PLAINTIFF
ADC #162003

v.                                      4:20CV00831-BRW-JTK

A. CULCLAGER, et al.                                                          DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDATIONS

## INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge Billy Roy Wilson.  Any party may serve and file written objections to this recommendation.  Objections should be specific and should include the factual or legal basis for the objection.  If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection.  An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations.  The copy will be furnished to the opposing party.  Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1. Why the record made before the Magistrate Judge is inadequate.

2. Why the evidence proffered at the hearing before the District Judge (if such a Hearing is granted) was not offered at the hearing before the Magistrate Judge.

3. The detail of any testimony desired to be introduced at the hearing before

1

the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## **DISPOSITION**

### I.  Introduction

Plaintiff Derx is a state inmate incarcerated at the Cummins Unit of the Arkansas Department of Correction (ADC). He filed this pro se action pursuant to 42 U.S.C. § 1983, alleging deliberate indifference and failure to protect by Defendants.[1] (Doc. Nos. 2, 7)

This matter is before the Court on the Motion for Summary Judgment, Brief in Support, and Statement of Facts (Doc. Nos. 42-44) filed by remaining Defendant Andrea Culclager. Plaintiff filed a Response in opposition to the Motion (Doc. No. 45).

### II.  Amended Complaint (Doc. No. 7)

Plaintiff alleged that he was moved into a cell on March 31, 2020 with inmate Hampton at about 9:45 p.m. (p. 4) About 11:45 p.m., Hampton woke up and began to assault him sexually and physically. (Id.) Plaintiff yelled for help and about 12:00 a.m. Lt. Crawford came to the cell and

---

[1] Defendants Crawford and Reos were dismissed on September 2, 2020. (Doc. No. 11)

attempted to restrain Hampton. (pp. 4-5) Crawford then called for assistance and about 12:30 a.m. the officers sprayed inmate Hampton with mace to restrain him. (p. 5) Defendant Warden Culclager refused to approve the transport of Plaintiff to the local hospital to have a rape kit performed. (Id.) Plaintiff asked for monetary relief from Defendant. (p. 7)

**III.    Summary Judgment Motion**

Pursuant to FED.R.CIV.P. 56(a), summary judgment is appropriate if the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  See Dulany v. Carnahan, 132 F.3d 1234, 1237 (8th Cir. 1997).  "The moving party bears the initial burden of identifying 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'"  Webb v. Lawrence County, 144 F.3d 1131, 1134 (8th Cir. 1998) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (other citations omitted)).  "Once the moving party has met this burden, the non-moving party cannot simply rest on mere denials or allegations in the pleadings; rather, the non-movant 'must set forth specific facts showing that there is a genuine issue for trial.'"  Id. at 1135.  Although the facts are viewed in a light most favorable to the non-moving party, "in order to defeat a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." Id.

    **A.    Defendant's Motion**

Defendant asks the Court to dismiss Plaintiff's complaint due to his failure to state an Eighth Amendment claim for relief against her, and also because she is entitled to qualified immunity, which protects officials who act in an objectively reasonable manner. It may shield a

3

government official from liability when his or her conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity is a question of law, not a question of fact. McClendon v. Story County Sheriff's Office, 403 F.3d 510, 515 (8th Cir. 2005). Thus, issues concerning qualified immunity are appropriately resolved on summary judgment. See Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) (the privilege is "an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.").

To determine whether defendants are entitled to qualified immunity, the courts generally consider two questions: (1) whether the facts alleged or shown, construed in the light most favorable to the plaintiff, establish a violation of a constitutional or statutory right; and (2) whether that right was so clearly established that a reasonable official would have known that his or her actions were unlawful. Pearson v. Callahan, 555 U.S. 223, 232 (2009).[2] Defendants are entitled to qualified immunity only if no reasonable fact finder could answer both questions in the affirmative. Nelson v. Correctional Medical Services, 583 F.3d 522, 528 (8th Cir. 2009)..

In support of her motion, Defendant Culclager states in her Declaration that she served as the Superintendent of the Cummins Unit at the time of the incident at issue. (Doc. No. 42-1, p. 1) On April 2020, at approximately 2:00 a.m., she received a call from Lt. Crofford (previously identified by Plaintiff as Crawford) who informed her that Plaintiff Derx and another inmate,

---

[2]Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Nelson, 583 F.3d at 528 (quoting Pearson v. Callahan, 555 U.S. at 236).

Lamar Hampton, were involved in an altercation and were taken to the infirmary. (Id.) Crofford telephoned her a second time and told her that Plaintiff alleged that Hampton forced his penis in Plaintiff's mouth, but did not ejaculate, and that medical staff indicated that Plaintiff may need to go to the hospital for a rape kit test. (Id., p. 2) Because Plaintiff reported that Hampton did not ejaculate in his mouth, Culclager checked with senior medical staff, Director of Nursing (DON) Dana Haynes, and was advised that it was not necessary for Plaintiff to go to the emergency room under those circumstances. (Id.) Based on that statement, Culclager did not authorize Plaintiff to be transported to the Dumas Hospital, but would have, if Ms. Haynes told her it was necessary. (Id.)

According to Plaintiff's medical records, he reported to the infirmary the following: "he (Hampton) was sleep and he woke me up and said I want to fuck. I said no. He jumped up and started putting a sheet up. He pulled out his penis and shoved it in my mouth, I jerked away and that's when he started physically assaulting me. He didn't get the chance to cum because I didn't let him. I have a knot behind my ear and behind my head." (Doc. No. 42-3, p. 1) Plaintiff also told the nurse that he finished the rest of the coffee in his cup. (Id.) The record indicated that Plaintiff had three superficial scratches behind his left ear and a small nodule above his ponytail, with no active bleeding or drainage noted. (Id.) The record also noted that HSA D. Haynes was notified, with instructions for Plaintiff to be returned to the barracks. (Id.)

According to Plaintiff's official witness statement, dated April 1, 2020, "On April 1st, 2020, @ approx.. 12:00 am, I was in the cell with inmate Hampton. At this time this inmate woke up and stated 'you wanna fuck.' I stated 'no I'm not doing it.' He then got up and jumped off the top rack and started to put a blankit up. I jerked it down. This inmate then forced his penis in my

mouth. (he didn't cum). He didn't penetrate anly, at this point He did begain to get physical, leaving a knot on the back of my head and behind my ear. I would like to push this all the way to free world court for sexual assault. Also have this looked into throly on why this inmate was placed back in the cell. Byut I'm in a 1 man cell…." (Doc. No. 42-4)

In his deposition testimony, Plaintiff repeated the facts as set forth above, but also claimed that he told the nurse in the infirmary that inmate Hampton had pre-ejaculated in his mouth. (Doc. No. 42-5, p. 21) He stated that he was unaware that he was not supposed to drink anything before he went to the infirmary, and finished his cup of coffee before he was removed from his cell. (Id., p. 22) He admitted that the nurse in the infirmary examined him after the incident but claimed that the medical report falsely stated that he reported no ejaculation. (Id., pp. 23-25) He later admitted that he did not include the pre-ejaculation fact in his witness statement, the grievance he filed against Defendant Culclager, or in his Amended Complaint. (Id., pp. 46, 69, 98) Plaintiff claimed he needed to have the rape kit done at the hospital to make sure Hampton did not have HIV, and he admitted that he was tested for HIV/AIDS two days later. (Id., p. 53) He also claimed that after the incident he got dizzy and passed out, although that also is not reflected in the medical record. (Id., p. 54)

Finally, according to the Major Disciplinary filed against inmate Hampton, when Plaintiff notified the infirmary that Hampton forced his penis in Plaintiff's mouth, a PREA investigation was conducted and sent to Internal Affairs. (Doc. No. 42-6) The investigator found that Hampton admitted that he tried to put his penis in Plaintiff's mouth and Hampton was then charged with several disciplinary violations. (Id.)

    **B.**    **Plaintiff's Response (Doc. No. 45)**

Plaintiff claimed that Defendant knew Hampton was supposed to be in a one-man cell and that she was responsible to make sure inmates were safe and provided with medical care. He claimed prison rape causes shame and depression and that Defendant stated he did not need to be taken to the hospital.

**C.    Analysis**

To support a claim for an Eighth Amendment violation, Plaintiff must allege and prove that Defendant was deliberately indifferent to a serious medical need. Farmer v. Brennan, 511 U.S. 825, 834 (1994). However, even negligence in diagnosing or treating a medical condition does not constitute a claim of deliberate indifference. Estelle v. Gamble, 429 U.S. 97, 105-06 (1976). Rather, the "prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation," Estate of Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir. 1995). See also Smith v. Marcantonio, 910 F.2d 500, 502 (8th Cir. 1990) (holding that a mere disagreement with a course of medical treatment is insufficient to state a claim for relief under the Eighth Amendment). Furthermore, prison physicians are entitled to exercise their medical judgment, and "do not violate the Eighth Amendment when, in the exercise of their professional judgment, they refuse to implement a prisoner's requested course of treatment." Long v. Nix, 86 F.3d 761, 765 (8th Cir. 1996). Finally, "[i]n the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that [he] did not feel [he] received adequate treatment." Dulany, supra, 132 F.3d at 1240.

Furthermore, "a general responsibility for supervising the operations of a prison is

7

insufficient to establish the personal involvement required to support liability." Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995). A prison official who is "not involved in treatment decision made by the medical unit's staff and 'lacked medical expertise,...cannot be liable for the medical staff's diagnostic decision[s].'" Keeper v. King, 130 F.3d 1309, 1314 (8th Cir. 1997) (quoting Camberos, 73 F.3d at 176.) Finally, "if any claim of medical indifference ... is to succeed, it must be brought against the individual directly responsible for [plaintiff's] medical care." Kulow v. Nix, 28 F.3d 855, 859 (8th Cir. 1994) (quoting Brown v. Wallace, 957 F.2d 564, 566 (8th Cir. 1992)).

According to the undisputed facts, Plaintiff was taken to the infirmary and treated for the sexual assault, and he does not claim that he was not medically examined or treated, or that Defendant denied him needed physical or mental treatment in the infirmary. Plaintiff further admitted that his witness statement did not include the pre-ejaculation claim, and that he drank coffee before he went to the infirmary. In addition, based on the report given to Defendant Culclager, that Hampton did not ejaculate, she decided to consult with the chief health officer about the need to transport Plaintiff for a rape kit. Her decision to follow the nurse's advice was not deliberately indifferent to Plaintiff's medical needs. Therefore, the Court finds as a matter of law that the facts alleged by Plaintiff against Defendant Culclager do not support an Eighth Amendment claim for relief.

**IV.   CONCLUSION**

IT IS, THEREFORE, RECOMMENDED that Defendant's Motion for Summary Judgment (Doc. No. 42) be GRANTED, and Plaintiff's complaint against Defendant be DISMISSED with prejudice.

IT IS SO RECOMMENDED this 3rd day of August, 2021.

_____
JEROME T. KEARNEY
UNITED STATES MAGISTRATE JUDGE